IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN S. DROWSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-538 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 17th day of August, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 15) filed in the above-captioned matter on December 22, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on November 25, 2020,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

Plaintiff Colleen Drowser protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, effective December

26, 2016, claiming that she became disabled on April 22, 2016, due to diabetes, neuropathy, arthritis, asthma, and chronic pain. (R. 12, 148-54, 185). After being denied initially on May 23, 2017, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on November 27, 2018. (R. 12, 91-95, 96-97, 29-68). In a decision dated February 27, 2019, the ALJ denied Plaintiff's request for benefits. (R. 12-23). The Appeals Council declined to review the ALJ's decision on February 21, 2020. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 404.1545(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See* 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See* 20 C.F.R. § 404.1523.

### III. The ALJ's Decision

In her February 27, 2019 decision, the ALJ found that Plaintiff met the insured requirements of the Act through March 31, 2021. (R. 14). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 22, 2016. (R. 14). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically diabetes mellitus, diabetic neuropathy, arthritis, asthma, and obesity. (R. 14-15). The ALJ found that Plaintiff's alleged limitations of cirrhosis of the liver, histal hernia, cervical degenerative disease, gastroparesis, and carpal tunnel syndrome did not qualify as severe impairments. (R. 15). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 15-17).

The ALJ found that Plaintiff retained the RFC to perform light work, but with the following non-exertional limitations:

- Lift/carry, push/pull 20 pounds occasionally and 10 pounds frequently
- Sit 6 hours, stand 4 hours, walk 4 hours. Can lean on workstation when standing. Can use cane for ambulation when

> walking and can carry objects in free hand or in container with handle.  Can adjust position each hour up to two minutes.
> - Can operate foot controls with either foot occasionally.  Both hand [sic] limited in handling or fingering or feeling to frequent but not continuous use.
> - Limited to occasional overhead reaching with either arm.
> - Pace of work is determined by the person, but general production demands are met.
> - Work place remains generally the same at least two-thirds of the time
> - Ready access to a restroom, within two minutes [of] workstation.

(R. 17-21).  In so finding, she specifically gave the greatest weight to the medical opinion of Margel Guie, D.O.  (R. 20).  The ALJ used a vocational expert ("VE") to determine that Plaintiff was not capable of performing her past relevant work at Step Four of the process.  (R. 21).  The ALJ promulgated a number of hypothetical questions to the VE at Step Five to determine whether there were other jobs Plaintiff could perform, setting forth different combinations of functional limitations.  (54-67).  In response to the question setting forth the limitations ultimately included in the RFC – except for those involving manipulating, fingering, and feeling – the VE testified that Plaintiff could perform the occupations of information clerk, photocopy machine operator, and recreation aide.  (R. 22, 57).  The VE later confirmed that Plaintiff could still perform this work even taking into account the manipulating, fingering, and feeling limitations.  (R. 58).  Accordingly, the ALJ found that Plaintiff could do jobs that exist in significant numbers in the national economy and that she, therefore, was not disabled.  (R. 22-23).

## IV. Legal Analysis

Plaintiff argues that the ALJ erred in numerous ways in finding that she was not disabled.  The Court, however, reaches only one of these arguments – it agrees with Plaintiff that the RFC and/or hypothetical question to the VE formulated by the ALJ are not supported by substantial

evidence because of the ALJ's misinterpretation and/or misrepresentation of the medical opinion of state reviewing agent Margel Guie, D.O. Accordingly, the Court will remand for further consideration consistent with this Order.

As noted above, the ALJ found Plaintiff to be limited to light work with additional non-exertional limitations. (R. 17). In so finding, she gave significant weight to the assessments of both state agency medical consultants, Dr. Guie (R. 80-89) and Dilip Kar, M.D. (R. 69-78), but expressly gave greater weight to Dr. Guie's opinion. (R. 20). The ALJ stated that, according to Dr. Guie, Plaintiff could "sit 6 hours, stand 4 hours, walk 4 hours" (R. 20), which she found to be better supported by the record than Dr. Kar's more limited standing and walking restrictions, *i.e.*, that Plaintiff could stand and/or walk for a total of two hours a day per an eight-hour workday. (R. 74). Indeed, the ALJ incorporated Dr. Guie's sitting, standing, and walking limitations, as she understood them, into the RFC essentially unchanged. (R. 17).

Plaintiff, though, argues that this misrepresents Dr. Guie's opinion, which includes the phrasing that Plaintiff could "stand and/or walk (with normal breaks) for a total of 4 hours." (R. 85). Plaintiff argues that this means that her *combined* ability to stand and walk was limited to no more than four hours and not, as she claims the ALJ found, that she could do each for four hours a day. The Court agrees with Plaintiff that this is the most reasonable and logical interpretation of Dr. Guie's assessment. Defendant argues, nonetheless, that the ALJ's RFC finding was understood by the VE to mean that Plaintiff could sit and/or stand for a total of four hours, and that the VE accounted for this in finding that she could perform a more limited range of light work. The Court disagrees.

The transcript of the November 27, 2018 hearing is anything but clear regarding the VE's understanding of Plaintiff's walking and standing limitations. The language used by the ALJ in

her various hypotheticals involving light work basically mirrored that included in the RFC. In the first hypothetical, she asked the VE to consider someone with the RFC "to perform less than a full range of light work," including that this person "can sit for six or more hours, is limited to standing for four hours and walking for four hours." (R. 55). She later referenced back to this question and asked the VE to assume someone who could do less than a full range of light work and who "could sit for six hours and they could stand for up to four hours and walk for up to four hours." (R. 58). The use of this conjunctive phrasing implies that the VE was to assume that the hypothetical individual can both walk for four hours and stand for four hours. While the Court cannot divine the VE's understanding, it does note that the VE at no time suggested any erosion of the light occupational base based on an inability to stand and/or walk for six hours, nor did she indicate that her opinion that Plaintiff could perform these light jobs was inconsistent with the Dictionary of Occupational Titles. It is reasonable to assume that the VE took the ALJ's words at face value and considered an individual who could stand for four hours and walk for four hours, limitations not inconsistent with light work. At the very least, the Court cannot assume that the VE had a different understanding of the ALJ's questions that would alleviate the conflict between the RFC and Dr. Guie's opinion. Indeed, upon questioning from counsel, the VE at one point characterized the light work hypothetical as involving someone who "could sit for six hours, stand or walk for four hours." (R. 65). Just a moment later, she characterized the hypothetical individual as a person "able to sit for six hours, stand for four, walk for four." (R. 66). This record simply does not allow the Court to assume that the VE afforded the ALJ's RFC language anything other than its plain meaning.

      Therefore, the same misrepresentation that appeared in the ALJ's RFC finding in her decision also occurred during her questioning of the VE. Like the RFC finding, a hypothetical

question to a vocational expert must accurately portray the claimant's physical and mental impairments as supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The difference in phrasing between the ALJ's RFC findings and Dr. Guie's opinion, a difference that does not appear to have been intentional, renders the record ambiguous as to who understood what. While the ALJ, of course, was not required to adopt Dr. Guie's standing and walking opinions verbatim, she purported to do so, apparently unaware that her representation of those opinions materially differed from the way in which Dr. Guie set them forth in his assessment.[1]

This mischaracterization was material, as the ALJ limited Plaintiff to light work, as defined in 20 C.F.R. § 404.1567(b). Light work, however, generally requires the ability to stand and/or walk at least six hours out of an eight-hour day. *See* SSR 83-10, 1983 WL 31251 (S.S.A.), at *6. Although the RFC formulated by the ALJ, under the most reasonable reading of the language used, provided that Plaintiff could stand and walk up to eight hours, this finding, as discussed, was based on her misreading or misphrasing of Dr. Guie's opinion, one to which she gave great weight. Taking Dr. Guie's opinion as it is, which again is what the ALJ purported to do, Plaintiff could stand/walk only four hours per workday, which would significantly limit her ability to perform light work. Since the basis of the ALJ's finding that Plaintiff could perform a limited range of light work was in error, and because that error was material, remand is required.[2] *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (an ALJ's evidentiary findings cannot be based on wrong reasons).

---

1   Even assuming that Dr. Guie's opinion was open to multiple interpretations, or even that the ALJ's RFC findings were so open, the Court would still remand the matter, as the record contains no acknowledgement or discussion of any perceived ambiguity by the ALJ.

2   The Court notes that the other opinions in the record, as the ALJ acknowledged, contained greater limitations to Plaintiff's ability to stand and walk than did Dr. Guie's, and these opinions would certainly not support a finding that Plaintiff could perform light work.

Defendant further argues that, despite any such mistake in regard to the RFC finding and/or hypothetical question to the VE, the ALJ's decision should be affirmed because the VE also testified that Plaintiff was able to perform sedentary jobs with the same non-exertional limitations. Indeed, the ALJ did set forth a number of scenarios to the VE, including at least one that included all of the non-exertional restrictions ultimately included in the RFC, but that assumed that the individual could perform only sedentary work. (R. 61). The VE testified that such a person could perform the jobs of telephone solicitor, claims clerk II, and receptionist in response to this hypothetical. (*Id.*). Because sedentary work generally does not require a claimant to stand and/or walk beyond the limitations to which Dr. Guie opined, Defendant argues that this line of questioning cured any misunderstanding the ALJ may have had about Dr, Guie's opinion.

While not without certain logical merit, the Court finds that this argument does not adequately address what happened here. It is important to note that the ALJ found that Plaintiff could perform other work in the national economy at Step Five because she could perform the jobs of information clerk, photocopy machine operator, and recreation aide, all of which require the ability to perform a limited range of light work. (R. 22). The ALJ did not rely upon, or even mention in the decision, the sedentary jobs that the VE testified Plaintiff could perform. Her decision, therefore, was based on the finding that Plaintiff could perform these three jobs, a finding that, based on the Court's findings herein, is not supported by substantial evidence.

Defendant suggests that the Court should find that remand is unnecessary because the ALJ would have found Plaintiff capable of performing the positions of telephone solicitor, claims clerk II, and receptionist in any event. However, this is inconsistent with the *Chenery*

---

Indeed, the ALJ seems to have given Dr. Guie's opinion such significant weight, at least in part, because it contained the least restrictive limitations on Plaintiff's ability to stand and walk.

doctrine, which provides that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943). *See also Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001). Were the Court to find that the record demonstrates that Plaintiff could perform sedentary jobs not relied upon by the ALJ, it would be substituting its own grounds for those of the Commissioner.

In this regard, the Court finds persuasive the reasoning in those cases addressing the similar situation where the ALJ erroneously decided the case in the Commissioner's favor at Step Four of the sequential process, but the record arguably demonstrated that had the ALJ continued, he or she would have resolved the case in the Commissioner's favor at Step Five in any event. For example, in *Baines v. Astrue*, 781 F. Supp. 2d 228 (D. Del. 2011), the ALJ rested his decision on the finding that the claimant could perform her past relevant work, a finding which the district court found to lack the support of substantial evidence because the job the ALJ found the claimant could perform did not meet the definition of past relevant work set forth at 20 C.F.R. § 404.1565(a) because it had not been performed within the past 15 years. The Commissioner asserted that the ALJ's decision should be affirmed because even if the ALJ erred in his Step Four determination, the VE had also testified that there was other representative work the claimant could perform consistent with the RFC. While acknowledging that "erroneous step four findings can be rendered harmless by the identification of other work consistent with a plaintiff's RFC at step five," the court noted that "the ALJ never completed the alternative analysis by making the requisite findings regarding the vocational expert's testimony and its potential application to [the claimant]." *Id.* at 237. Noting that the ALJ had made no findings with respect to the VE's testimony regarding the jobs the claimant could do at Step Five, and relying on *Chenery*, the court held that it "cannot independently perform the step five

11

analysis that would have been undertaken by the ALJ in the first instance but for his error at step four." *Id.* at 237-38. Accordingly, the case was remanded for further findings and/or proceedings. *See id.* at 238.

Similarly, in *Lamb v. Colvin*, No. 1:13-CV-00137 GSA, 2014 WL 3894919 (E.D. Cal. Aug. 4, 2014), the ALJ had halted his analysis at Step Four, finding that the claimant could perform her past relevant work. On appeal, the district court found this decision to be erroneous, as the ALJ failed to resolve the inconsistency between the VE's testimony and the Dictionary of Occupational Titles. *See id.* at \*6. The Commissioner argued that this Step Four error was harmless nonetheless, because, although the ALJ did not make a Step Five determination, the VE testified that Plaintiff was capable of performing other jobs that existed in the national economy. The court was not persuaded, holding that, although an alternative Step Five analysis by the ALJ may have rendered the error harmless, the ALJ engaged in no such analysis. The court found that it could not simply perform the Step Five analysis that the ALJ had not done. *See id.* at \*\*6-7. *See also Garcia v. Colvin,* No. 12-C-4191, 2013 WL 3321509, at \*11 (N.D. Ill. June 28, 2013) ("We reject the Commissioner's argument that the ALJ's step four finding is harmless error given the VE's testimony that [the claimant] could perform other work in the national economy. Not only are there other errors requiring remand here, the ALJ did not make a step five finding and we cannot simply 'fill that gap.'") (quoting *Getch v. Astrue,* 539 F.3d 473, 481 (7th Cir.2008)); *Bell v. Barnhart,* No. 01-4112-JAR, 2002 WL 31178223, at \*2 (D. Kan. Sept. 30, 2002) ("The Commissioner, and not the Court, should have the opportunity to make a Step Five determination in the first instance.").

Although those cases involved situations where the ALJ had rested his or her decision on a Step Four determination later found to be in error, the same rationale applies here, where the

ALJ's Step Five finding is not supported by substantial evidence and where the ALJ has made no alternative Step Five findings that might render the error harmless. As courts have explained, the harmless error doctrine does not permit the Commissioner to simply ask the court to accept an alternative basis for a decision, when no such alternative basis was raised at the administrative level, regardless of the fact that the record might support such a basis. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The Court, in finding the VE's testimony that Plaintiff could perform other work in the national economy consistent with an RFC free from the tinge of the ALJ's misrepresentation of Dr. Guie's opinion, would not be finding a harmless error, but rather engaging in its own Step Five analysis.

This is very different than a case such as *Walck v. Colvin*, No. 1:15-CV-01265-CCC-GBC, 2017 WL 3405115 (M.D. Pa. Mar. 17, 2017), *report and recommendation adopted sub nom. Walck v. Berryhill*, No. 1:15-CV-1265, 2017 WL 3394399 (M.D. Pa. Aug. 8, 2017). There, the ALJ's error in finding that the claimant could perform certain jobs without properly accounting for the frequency of the sit/stand option was harmless because the VE had testified that the claimant could perform those very jobs regardless of the frequency. *See id.* at *8. Here, the Court cannot find that the ALJ's error in determining that Plaintiff could perform the jobs of information clerk, photocopy machine operator, and recreation aide was harmless because the record does not, in fact, demonstrate that Plaintiff could perform these jobs regardless of the error. At best, the record could support an alternative finding that Plaintiff could do different jobs based on a different RFC. The ALJ, and not the Court, needs to perform this analysis in the first instance.

## V. <u>Conclusion</u>

Accordingly, the Court remands this matter for further consideration of Plaintiff's RFC and the hypothetical question to the VE, including further analysis of the impact of Dr. Guie's opinion, and of what jobs, if any, Plaintiff can perform at Step Five of the sequential analysis. Although the Court does not reach the other issues raised by Plaintiff, the Commissioner should be conscious of those concerns in reconsidering the case on remand.

s/Alan N. Bloch<br>
United States District Judge

ecf:     Counsel of record